**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**LE MAN TAT,**

Petitioner,

v. Civil No. **3:26CV676 (RCY)**

**JEFFREY CRAWFORD, *et al.*,**

Respondents.

**MEMORANDUM OPINION**

Le Man Tat ("Petitioner"), proceeding *pro se*, is an alien who is present in the United States without admission. He filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). Petitioner alleges, *inter alia*, that Respondents' application of 8 U.S.C. §1225(b) to mandate his detention violates the Immigration and Nationality Act ("INA"). ECF No. 1, at 6–7.[1] Petitioner additionally submitted a letter to the Court. ECF No. 6. Respondents filed an Opposition. ECF No. 7. Petitioner filed a response. ECF No. 8. Subsequently, Respondents filed a Notice of Development. ECF No. 9. For the reasons set forth below, the § 2241 Petition will be DENIED.

## I. PROCEDURAL HISTORY

On July 16, 2026, Petitioner filed his § 2241 Petition claiming that he has been improperly denied a bond hearing and was not subject to mandatory detention. ECF No. 1, at 6. Petitioner asserts that he is detained without being provided any hearings or information about his case. *Id.* at 7. He states that his mother was a U.S. citizen and passed away during the pandemic. *Id.* He

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

further states that he does not have family in Vietnam and all of his family lives in the United States, including his three brothers who are U.S. citizens. *Id.* On July 20, 2026, Petitioner submitted a letter to the Court apologizing for his past crime. ECF No. 6, at 1. He asks the Court to look into a denial of "halfway house" placement in 2026 due to a hold by ICE. *Id.* He indicates his hope to "start fresh" in Virginia and not return to Utah. *Id.*

On July 27, 2026, Respondents filed an Opposition in which they assert that "this matter is materially different from *Ortega Miranda v. Bondi*, No. 3:25CV769, 2026 WL 287179 (E.D. Va. Feb. 3, 2026), in response to the Court's July 20, 2026 Memorandum Order, ECF No. 4. Opp'n, ECF No. 7, at 1. Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1231 and the § 2241 Petition should be dismissed because Petitioner has been detained less than the presumptively reasonable six months, Petitioner has not shown that there is no significant likelihood of removal in the reasonably foreseeable future, and that compliance with *Zadvydas v. Davis*, 533 U.S. 678 (2001), in this case serves to provide Petitioner with due process. *Id.* at 1–2.

On August 10, 2026, Petitioner filed a response. ECF No. 8. Petitioner asserts that he has complied with all requests, such as submitting his passport and green card. *Id.* at 1. He again contends that he applied for "halfway house" placement and his request was denied due to ICE intervention. *Id.* Petitioner states that detention is impacting his mental and physical health and requests removal to Vietnam or release from custody. *Id.* Attached to his response, Petitioner submitted a Warning for Failure to Depart dated May 24, 2006, a Decision to Continue Detention dated May 5, 2025, and a Decision to Continue Detention dated July 23, 2026. ECF No. 8-1.

On August 14, 2026, Respondents filed a Notice of Development, stating that Respondents had recently obtained a travel document for Petitioner, with which they could promptly execute Petitioner's removal to Vietnam. ECF No. 9, at 1. On August 31, Respondents filed a Second

Notice of Development, informing the Court that Petitioner has been designated as a passenger on a charter flight scheduled to depart in early September 2026, and thus Respondents are positioned to promptly effectuate Petitioner's removal to his native Vietnam. ECF No. 10, at 1.

## II. FACTUAL BACKGROUND

Petitioner provides very little information in his § 2241 Petition and so the Court must rely on submissions by Respondents.

> 5. Petitioner is a 51-year-old native and citizen of Vietnam.
>
> 6. On September 21, 1990, Petitioner was admitted into the United States at Los Angeles, California as a lawful permanent resident.
>
> 7. On June 30, 2000, Petitioner was convicted of Money Laundering and Possession of Counterfeit Securities.
>
> 8. On April 11, 2006, [Department of Homeland Security ("DHS")] encountered Petitioner at the United States Penitentiary at Florence, Colorado ("USP Florence") while Petitioner was serving an 84-month sentence for Possession of Counterfeit Securities and Money Laundering.
>
> 9. On May 5, 2006, ICE officers arrested Petitioner from USP Florence at the conclusion of his seven-year sentence for Possession of Counterfeit Securities and Money Laundering. Petitioner was issued a Notice to Appear, initiating removal proceedings, and remained in DHS custody.
>
> 10. On May 24, 2006, Petitioner had an individual hearing before an immigration judge. Petitioner filed a Form I-589, Application for Asylum and Withholding of Removal, and Withholding under the Convention Against Torture with the Executive Office of Immigration Review ("EOIR") the same day. During the hearing Petitioner withdrew his application for asylum and an Immigration Judge ordered Petitioner removed from the United States to Vietnam. Neither party pursued an appeal and the removal order became immediately final.
>
> 11. On November 9, 2006, Petitioner was released from DHS custody on an Order of Supervision ("OSUP").
>
> 12. On April 13, 2007, Petitioner was arrested near Salt Lake City, Utah for a probation violation.
>
> 13. On April 24, 2007, Petitioner was sentenced to seven months in prison and 51 months of supervision.
>
> 14. On January 12, 2008, Petitioner was arrested near Salt Lake City, Utah for violating the terms of his conditional release.
>
> 15. On May 27, 2008, Petitioner was sentenced to time served and 48 months of supervision.
>
> 16. On June 09, 2008, Petitioner was discharged from the Serenity House after failing to complete a court-mandated [inpatient] program. Petitioner was arrested the same day for violating the terms of his conditional release.

17. On July 01, 2008, since he failed to complete the court-mandated treatment program, Petitioner was sentenced to twelve months and one day in prison with thirty-six months of supervision.

18. On February 9, 2009, Petitioner was encountered by DHS at the California City Federal Correctional Institution in California City, California.

19. On April 22, 2009, Petitioner was processed and released from DHS custody on OSUP.

20. On January 15, 2012, Petitioner was arrested at or near Salt Lake City, Utah for Possession of Cocaine with Intent to Distribute and Possession of a Firearm while Drug Trafficking.

21. On June 12, 2012, Petitioner was found guilty of Possession of Cocaine with Intent to Distribute and Possession of a Firearm while Drug Trafficking. Petitioner was sentenced to sixty months in prison and thirty-six months of supervised release.

22. On July 19, 2016, Petitioner was encountered by ICE during a criminal alien program screening while he was incarcerated at Federal Correctional Institution ("FCI") McDowell.

23. On July 29, 2016, ICE officers arrested Petitioner upon release from federal criminal custody.

24. On August 1, 2016, Petitioner was released from ICE custody on OSUP.

25. On January 30, 2020, Petitioner was arrested by the Federal Bureau of Investigation at or near Salt Lake City, Utah for Distribution of Methamphetamine.

26. On September 2, 2020, Petition[er] was found guilty of Distribution of Methamphetamine, 21 [U.S.C.] § 841(A)(1). Petitioner was sentenced to eighty-four months in prison.

27. On May 4, 2026, Petitioner was released from a U.S. Bureau of Prisons facility in Peter[s]burg, Virginia at the conclusion of his eighty-four month sentence. ICE officers arrested Petitioner upon his release from criminal custody in order to execute his removal to Vietnam. Petitioner was served a Notice of Revocation of Release, terminating his August 1, 2016 OSUP because of his conviction for Distribution of Methamphetamine. Immediately upon taking Petitioner into custody, [Enforcement and Removal Operations ("ERO")] officers began preparing the travel document application which included obtaining translations of various documents.

28. On July 17, 2026, Petitioner's travel document request was forwarded to the Vietnam attaché for processing.

29. Petitioner is currently detained under 8 U.S.C. § 1231 pending his removal from the United States to Vietnam.

30. Upon receipt of travel documents, ERO anticipates being able to effectuate Petitioner's removal to Vietnam as there are no known institutional impediments that would prevent Petitioner's removal.

ECF No. 7-1 ¶¶ 5–30. Respondents have now obtained a travel document for Petitioner. ECF No. 9, at 1.

## III. STANDARD OF REVIEW

### A. Habeas Petitions

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### B. Detention Under 8 U.S.C. § 1231 and *Zadvydas*

8 U.S.C. § 1231[2] governs the detention and removal of aliens subject to final orders of removal. Under § 1231, upon the issuance of a final order of removal to an alien, the alien shall be removed "within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The alien "*shall*" be detained during the removal period. *Id.* § 1231(a)(2)(A). An alien not removed during the 90-day removal

---

[2] Providing, in pertinent part:

> (a) Detention, release, and removal of aliens ordered removed
> (1) Removal period
> (A) In general
> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period")
> * * *
> (2) Detention
> (A) In general
> During the removal period, the Attorney General shall detain the alien[.]

8 U.S.C. § 1231(a)(1)–(2).

period may be released or detained. Under 8 U.S.C. § 1231(a)(3), aliens who do not leave the United States or are not removed during the removal period "*shall* be subject to supervision" pending their removal. 8 U.S.C. § 1231(a)(3) (emphasis added). But § 1231(a)(6) provides allowance for the continued detention of an alien after the removal period.

Section 1231 "does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Castaneda v. Perry*, 95 F.4th 750, 755–56 (4th Cir. 2024). But the United States Supreme Court addressed this issue in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Supreme Court considered whether § 1231(a)(6) authorizes the indefinite detention of an alien subject to a removal order, or whether the statute permits detention only for a period reasonably necessary to secure the alien's removal. *Zadvydas*, 533 U.S. at 692. Recognizing the "serious constitutional problem arising out of a statute that . . . permits an indefinite, perhaps permanent, deprivation of human liberty," *id.*, the *Zadvydas* Court "construe[d] [§ 1231] to contain an implicit 'reasonable time' limitation,'" *id.* at 682. This period, the Supreme Court determined, is presumptively six months. *Id.* at 701.

The six-month presumption "does not mean that every alien not removed must be released after six months." *Id*. But if an alien is detained beyond six months, the reasonable presumption no longer exists. At that point, if the alien makes a *prima facie* showing "'that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing' or release the alien." *Castaneda*, 95 F.4th at 756 (quoting *Zadvydas*, 533 U.S. at 701); *see also Menghua Wan v. Crawford*, No. 1:13-cv-1473 (JCC), 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) (explaining the burden-shifting test established in *Zadvydas* to assess the constitutionality of detention following the presumptively reasonable six-month period).

## IV. ANALYSIS

The issue before the Court is whether Petitioner's removal from the United States is likely to occur in the reasonably foreseeable future. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Based on the papers initially filed, this was a question open to debate. But recent filings have resolved the issue: Respondents have obtained the necessary travel papers for Petitioner. ECF No. 9, at 1. All that remains is for the Court to lift its injunction on further transfer and removal, and Petitioner's final order of removal can be effectuated. See *id.*

Because Petitioner's removal has become patently imminent, the Court easily finds that Petitioner's removal is likely to occur in the reasonably foreseeable future, *Zadvydas*, 533 U.S. at 701, and therefore the Court must deny the § 2241 Petition, vacate the order prohibiting further transfer, and permit the Government to move forward with effectuating Petitioner's final removal order.

## V. CONCLUSION

The § 2241 Petition (ECF No. 1) will be DENIED. The Court will VACATE the portion of the Memorandum Order entered on July 20, 2026, which prohibited Respondents from removing or transferring Petitioner from this District.

An appropriate Order will issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: September 1, 2026
Richmond, Virginia